IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DIANE SANCHEZ,

      Plaintiff,

v.                                Case No. 6:14-CV-1142-JTM-TJJ

BANK OF AMERICA, N.A.,
and URBAN SETTLEMENT SERVICES
d/b/a/ URBAN LENDING SOLUTIONS,

      Defendants.


## MEMORANDUM AND ORDER

Plaintiff Diane Sanchez seeks damages against defendants Bank of America, N.A. ("BOA") and Urban Settlement Services (d/b/a Urban Lending Solutions) ("Urban") (collectively "defendants")[1] for alleged breach of contract, promissory estoppel, negligent misrepresentation, fraud, and violations of the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq.* This matter is before the court on defendants' Motions to Dismiss (Dkts. 4 and 9).[2] For the reasons stated below, defendants' motions are denied.

### I.      Factual and Procedural Background

This case arises out of plaintiff's attempt to refinance her home mortgage. At some point prior to 2009, plaintiff obtained a home mortgage from lender Countrywide. Countrywide's

---

[1] BOA outsources some or all of its mortgage modification work to Urban. Plaintiff alleges that even when she received communications from Urban, such communications were on BOA stationary. Consequently, plaintiff is unsure as to whether the communications she received were from BOA or from Urban acting on behalf of BOA. For ease of discussion, use of the term "defendants" will refer to BOA and/or Urban.

[2] While each defendant has filed its own motion to dismiss, the claims contained in each motion are virtually identical. For this reason, the court finds it expedient to discuss the motions together. In the event that defendants' motions diverge, the unique claims will be discussed separately.

mortgage servicing unit was thereafter purchased by BOA.  Sometime between 2009 and 2011, plaintiff fell behind on her mortgage payments.  On December 21, 2012, plaintiff requested a mortgage refinance in an effort to correct her delinquent balance.

On January 9, 2013, defendants approved plaintiff's modification request and extended a formal offer for a modified mortgage.  To accept the offer, plaintiff was required to sign, have notarized, and return all loan paperwork by February 8, 2013.  Plaintiff went to one of BOA's branches in Wichita, Kansas, had her signature notarized, and returned the completed paperwork on February 5, 2013.  Pursuant to the loan modification, plaintiff was to submit monthly payments in the amount of $615.68 beginning in February 2013.  Plaintiff alleges that she has made these monthly payments in full without exception.

On February 19, 2013, plaintiff was notified that there was an error with regard to the notary's signature and was directed to correct and resubmit her loan modification paperwork. Plaintiff complied and, on April 5, 2013, was informed that her paperwork was being processed. However, on April 13, 2013, plaintiff received a letter denying her application because, according to defendants' records, "after being offered assistance, [plaintiff] indicated that [she] did not wish to accept the offer, or after initially asking to be considered for loan assistance, [she] withdrew the request."  Dkt. 38, at 57.  According to plaintiff, thus began her trouble.

Plaintiff alleges that, over the next year, she had multiple conflicting communications from defendants.  After receiving the April 13th letter, plaintiff spoke with a representative who allegedly told her to ignore the letter.  In late April 2013, defendants informed plaintiff that her second set of documents also had been improperly notarized.  Plaintiff again corrected and re-submitted the documents.  She subsequently received, on the same date, one letter stating that her loan application was complete and another that requested additional information.  When plaintiff

inquired as to the conflicting errors, defendants allegedly told her that the second letter had been generated in error and that her loan modification was in post-closing status.  However, just a few days later, plaintiff received a call notifying her that her application was incomplete.

On June 28, 2013, plaintiff received a letter denying her loan modification because her "loan was modified for [her] current hardship, or a related hardship, within the past three years." Dkt. 38, at 62.  Plaintiff alleges that she did not modify her mortgage during that time.  When plaintiff inquired about this denial, she was informed that her signature on her *original* loan did not include her middle initial, whereas her signature on the modified loan did.  These signatures allegedly had to be identical in order for defendants to process the application.  Plaintiff again re-submitted the loan paperwork.

In July 2013, plaintiff began receiving notices that her reduced monthly payments were "less than the total amount needed to bring [her] loan up to date."  Dkt. 38, at 63.  On August 5, 2013, defendants told plaintiff that her loan modification documents had been received and that her account would be updated once the papers were legally recorded.  However, on September 10, 2013, plaintiff received the following notice: "your account remains seriously delinquent.  If we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the Noteholder in your property."  Dkt. 38, at 90.

Plaintiff immediately contacted BOA and was assured that her loan modification agreement was on file and was instructed to ignore the September 10th letter.  Plaintiff claims that BOA allegedly promised to notify all three credit bureaus that she was not delinquent in her loan obligations.  Plaintiff subsequently received a letter that her loan was delinquent and BOA was considering foreclosure proceedings. In October 2013, defendants informed plaintiff that she had twenty payments due and that foreclosure was expected on February 5, 2014.

By December 2013, plaintiff's account still had not been updated with the loan modification information.  Plaintiff alleges that defendants told her to keep making payments on her mortgage under the refinanced terms, which she did.  On January 8, 2014, defendants informed that her loan modification documents had been rejected and that she could re-apply but modification was not guaranteed.

On March 7, 2014, plaintiff received a letter notifying her that her monthly mortgage payment had increased to $702.62, which was the monthly amount due under her original mortgage agreement.  One month later, on April 7, 2014, plaintiff received two letters from the law firm of Millsap & Singer.  One letter stated that the firm had been instructed to foreclose on the property and that plaintiff was being charged interest, late charges, attorney fees, and collection costs due to the loan's delinquency.  The other letter stated that if plaintiff's deficiency was not corrected, the firm *might* seek foreclosure on the property.  Four days later, on April 11, 2014, defendants referred plaintiff's property for foreclosure.

Plaintiff filed suit against defendants in the District Court of Sedgwick County, Kansas, on April 18, 2014, case number 14cv1176, for alleged breach of contract and violations of the KCPA.  Dkt 1-1.  On May 13, 2014, Urban removed this case to the United States District Court for the District of Kansas.  Dkt. 1.  On May 14, 2014, and May 20, 2014, BOA and Urban, respectively, filed Motions to Dismiss plaintiff's claims of KCPA violations.  Dkts. 4 and 9.  On September 12, 2014, plaintiff filed a motion to amend her complaint, which was granted.  On September 30, 2014, plaintiff filed a second motion to amend her complaint, which was also granted.  Plaintiff filed her Second Amended Complaint on October 17, 2014.  Dkt. 38.  This Second Amended Complaint added additional claims but retained the KCPA claims that are the subject of defendants' Motions to Dismiss.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6). Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.  *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal citations omitted); *see also* FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.  *Iqbal*, 556 U.S. at 678-79.  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.  *See id.* at 678. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

### III.    Discussion

**A.    Does the KCPA apply?**

Defendants contend that plaintiff fails to state a claim because the KCPA does not apply under these factual circumstances.  More specifically, defendants allege that the KCPA does not apply to "financial communications" concerning mortgage obligations.  The KCPA prohibits deceptive or unconscionable acts and practices in connection with a "consumer transaction." Under the Act, a consumer transaction is defined as "a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer."  K.S.A. § 50-624(c).  "[T]he guiding principle to be applied in interpreting the KCPA is that the act is to be liberally construed in favor of the consumer."  *Schneider v. Citibank NA, et al.*, 2014 U.S. Dist. LEXIS 7000, at *16 (D. Kan. Jan. 21, 2014) (quoting *State ex rel. Stephan v. Brotherhood Bank & Trust Co.*, 8 Kan. App. 2d 57, 649 P.2d 419, 422 (Kan. Ct. App. 1982)).

Defendants allege that, since plaintiff never obtained her refinance, no consumer transaction ever occurred.  The court disagrees and finds that the KCPA offers plaintiff an avenue for relief.  Although the Tenth Circuit has yet to rule on whether the KCPA applies to "financial communications" concerning mortgage obligations, district courts throughout Kansas have undertaken the issue.  Most recently, Judge Murgia held that the KCPA applied where the defendant bank (interestingly enough, the *same* bank that is a defendant in this case) solicited the plaintiff to modify her loan.  *Rogers v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 91594, at *3-5 (D. Kan. July 7, 2014).

The plaintiff in *Rogers*, much like plaintiff here, attempted to obtain a refinance of her home mortgage but was allegedly stonewalled at every turn and was eventually forced into bankruptcy.  *Rogers*, 2014 U.S. Dist. LEXIS 91594, at *1.  The plaintiff filed suit, alleging that

6

her "financial communications" with the defendant bank were "consumer transactions" as that term is defined under the KCPA.  Judge Murgia agreed, holding that the plaintiff "is a consumer; defendant is a supplier; and the solicitation of a loan modification is a consumer transaction."  *Id*. at *4.

In reaching his decision, Judge Murgia relied upon the similar finding in S*hane v. Citimortgage, Inc*. 2012 U.S. Dist. LEXIS 106115 (D. Kan. July 31, 2012).  In *Shane*, the plaintiff homeowner sought to refinance her home mortgage.  2012 U.S. Dist. LEXIS 106115, at *4.  Although conditionally approved for the modification, the refinance ultimately fell through. *Id*.  During the refinance application process, the defendant bank, unbeknownst to the plaintiff, terminated plaintiff's automatic debit for her monthly mortgage payments, damaging her credit history and ratings.  *Id*. at *5.  The plaintiff filed suit, alleging deceptive and unconscionable acts and practices in violation of the KCPA.  *Id*. at *7.  Judge Robinson found that the loan transaction fell within the parameters of the KCPA, citing both the plain language of the Act as well as the general preference for its liberal construction.  *Id*. at *8.

Likewise, in January 2014, Judge Crow determined that, even absent actually obtaining a loan refinance, "financial communications" between a borrower and a lender about a possible refinance constituted a "consumer transaction" that was protected by the KCPA.  *Schneider v. Citibank, NA et al.*, 2014 U.S. Dist. LEXIS 7000, at *21-23 (D. Kan. Jan. 21, 2014) (holding that "[e]ven though Plaintiffs did not obtain refinancing from Defendants in 2010, Defendants' grant of a home loan mortgage to Plaintiffs from 2007-2010 is a consumer transaction, and is the subject of Plaintiff's claims.").

Defendants ignore the holdings of *Shane* and *Schneider*,[3] and instead rely upon this court's holding in *Bowers v. Mortgage Electronic Registration Systems, Inc., et al.*, 2012 U.S. Dist. LEXIS 143569 (D. Kan. Oct. 4, 2012).  In *Bowers*, the plaintiff homeowners attempted to refinance their variable-rate mortgage but ultimately failed to execute the refinancing documents. 2012 U.S. Dist. LEXIS 143569, at *12-17.  Unfortunately, despite this failure, the title company erroneously informed the defendant lender that the refinancing documents had been signed.  *Id*. at *17.  Therefore, the defendant lender modified the plaintiffs' payments in accordance with the refinanced loan.  *Id*. at *18.  The plaintiffs proceeded to make the re-financed payments for several months, never mentioning to the defendant lender that they had never actually signed the papers.  *Id*. at *21-22.  Once the error was discovered, the defendant lender reinstated the plaintiffs' initial mortgage, thereby causing the plaintiff's monthly mortgage payment to increase back to its original amount.  *Id*. at *22.

Due to the confusion, the defendant bank recorded a "Caveat as to the Existence of a Mortgage Lien Due to Erroneous Release of Mortgage," ("Caveat") which stated, among other things, that the release of the plaintiffs' initial mortgage was in error, that the original mortgage continued to exist, and that the original underlying debt had not been paid.  *Bowers*, 2012 U.S. Dist. LEXIS 143569, at *23.  The plaintiffs filed suit alleging, *inter alia*, violations of the KCPA. In ruling on the defendant's motion for summary judgment, this court concluded that "financial communications" did not fall within the scope of the KCPA.  *Id*. at *43.

Given the factual allegations in the case at hand, and the recent development in the case law, especially the holding in *Rogers*, which presents nearly an identical situation to the one now before this court against the *same* defendant, the court is now persuaded that the proper analysis

---

[3] The court acknowledges that the *Rogers* opinion was not filed until July 7, 2014.  Defendants' Motions to Dismiss were filed in May 2014.

is that of the *Rogers*, *Shane*, and *Schneider* courts.  In so finding, the court is guided by the

principle that the KCPA "is to be liberally construed in favor of the consumer."  *Schneider*, 2014

U.S. Dist. LEXIS 7000, at \*22 (quoting *Stephan*, 8 649 P.2d at 422).[4]  Therefore, the court finds

that the KCPA applies to plaintiff's claims as alleged.  As such, the court denies this portion of

defendants' motions.

**B.      Are plaintiff's allegations sufficient?**

Defendants next argue that, even if the KCPA applies, plaintiff's allegations with respect

to Count III, namely her allegations of defendants' deceptive acts and practices, are insufficient

to state a claim because they are not plead with particularity.  To state a claim under the KCPA, a

plaintiff must allege deceptive acts or practices and/or unconscionable acts or practices.  K.S.A.

§§ 50-626(a), 50-627(a).  Here, plaintiff alleges both violations (Counts III and IV, respectively);

however defendants only challenge the sufficiency of the *deceptive* acts or practices claim.

**1.      Deceptive Acts or Practices**

Under the KCPA, suppliers may not

> (1) make representations—knowingly or with reason to know—that certain
> services have benefits that they do not, in fact, have; (2) offer services when they
> lack the intent to sell them; or (3) falsely state—knowingly or with reasons to
> know—that a consumer transaction involves consumer rights, remedies, or
> obligations.

---

[4] The court also acknowledges that the Kansas Supreme Court, while it has not squarely addressed the issue of whether "financial communications" in connection with a mortgage obligation are "consumer transactions," has resolved such cases on their merits rather than by finding the KCPA inapplicable.  *See e.g., Gonzales v. Assoc. Fin. Serv. Co. of Kan., Inc.*, 266 Kan. 141, 967 P.2d 312 (1998) (finding insufficient facts to establish that the defendant lender purposefully withheld relevant information or misstated facts with the intention to deceive the plaintiff borrower).  See also *Mort. Elec. Registration Sys., Inc. v. Graham*, 44 Kan. App. 2d 547, 247 P.3d 223, 231 (Kan. Ct. App. 2010) (finding insufficient facts to show any KCPA violation of unconscionable acts by the mortgage lender).

*Rogers*, 2014 U.S. Dist. LEXIS 91594, at *5 (citing K.S.A. §§ 50-626(b)(1)(A); (b)(5); (b)(8)).[5]

Deceptive acts and practices include: "the willful use, in any oral or written representation, of

exaggeration, falsehood, innuendo or ambiguity as to a material fact; and the willful failure to

state a material fact, or the willful concealment, suppression or omission of a material fact." *Id*.

(citing K.S.A. §§ 50-626(b)(2); (b)(3)).

Plaintiff's allegations in Count III of her Second Amended Complaint adequately track

this statutory language.   She alleges that defendants willfully made oral and written

misrepresentations with regard to her refinancing.  For example, plaintiff claims that defendants

repeatedly told her that her loan would be modified provided she followed their instructions.

Defendants also told plaintiff in January and May 2013 that her loan would be modified once she

signed the loan modification documents.  Defendants twice alleged that plaintiff withdrew her

request for loan modification, even though plaintiff claims she never withdrew her request.  In

September 2013, defendants told plaintiff that a permanent loan modification agreement was

reflected on her account.  However, the very next month, defendants informed her that they were

considering foreclosure actions.

Defendants contend that plaintiff was required to plead her deceptive acts or practices

claim with particularity because it sounds in fraud.  However, although the KCPA claim sounds

in fraud, there are other key differences that justify a lower pleading standard.  *See Rogers*, 2014

U.S. Dist. LEXIS 91594, at *7-8.  "The key difference is that the KCPA does not include an

'intent to defraud' requirement."  *Id*. at *7 (citing *William v. Ewen*, 230 Kan. 262, 634 P.2d

1061, 1065 (Kan. 1981) ("[P]rior knowledge or intent to violate the [KCPA] is not a requirement

and . . . there may be liability even though the deception or unconscionable practice was

---

[5] This list is not exclusive.

performed innocently and without the intent to injure the consumer."")).  Ultimately, "a plaintiff

may prove a KCPA claim by a preponderance of the evidence; clear and convincing evidence is

not required."  *Id*. at \*7 (citing *Ray v. Ponca/Universal Holdings, Inc.*, 22 Kan. App. 2d 47, 913

P.2d 209, 212 (Kan. Ct. App. 1995)).

Therefore, the court concludes that plaintiff's deceptive acts or practices claim need not

be pleaded with particularity.  As noted above, in order to survive a motion to dismiss, plaintiff's

Second Amended Complaint must present factual allegations, which when assumed to be true,

"raise a right to relief above the speculative level" and must contain "enough facts to state a

claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555, 570.  The court finds that

plaintiff has sufficiently alleged that defendants violated the KCPA by engaging in deceptive

acts or practices.  Accordingly, this portion of defendants' motion is denied.

**C.      Are the allegations relating to one transaction or multiple incidents?**

Finally, defendants argue that all allegedly deceptive or unconscionable acts relate to one

single transaction, thereby preventing plaintiff from seeking recovery for each of defendants'

individual actions.      Defendants liken their decisions in implementing the alleged loan

modification agreement to the "hub of a wheel" while all of plaintiff's allegations are merely the

"wheel's spokes."  Dkt. 5, at 6.  The court disagrees.

The KCPA itself contemplates that it will apply to "each violation," awarding up to

$10,000 for each.  K.S.A. § 50-636(a).  Both Kansas state and federal courts have read the Act to

apply to *all* violations "before, during, or after the transaction."  K.S.A. § 50-627(a); *see, e.g.*,

*Rogers*, 2014 U.S. Dist. LEXIS 91594, at \*12-13 ("[t]he court finds it appropriate to count each

[KCPA] violation individually); *Schneider*, 2014 U.S. Dist. LEXIS 7000, at \*23 (holding that the

cases cited by the defendant bank "do not establish that only one-time transactions qualify as

11

consumer transactions under this Act); *Shane*, 2012 U.S. Dist. LEXIS 106115, at *8-9 n.23 (refusing to impose a requirement that the KCPA is limited to only one-time single transactions); *see also Miller v. Midwest Serv. Bureau of Topeka, Inc.*, 229 Kan. 322, 623 P.2d 134, 1345 (Kan. 1981). The court therefore finds it appropriate to count each of the alleged violations separately. As such, this portion of defendants' motions is denied.

**IT IS THEREFORE ORDERED** this 6th day of November, 2014, that defendants' Motions to Dismiss (Dkts. 4 and 9) are hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE